**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 12-cv-02289-CMA

TODD E. LINDSEY,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,[1]

    Defendant.

## ORDER AFFIRMING THE DENIAL OF SOCIAL SECURITY BENEFITS

This matter is before the Court on Plaintiff Todd E. Lindsey's appeal of the Commissioner's February 9, 2011 decision denying his claim for Disability Insurance Benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-33. (AR at 18-29.)[2] Jurisdiction is proper under 42 U.S.C. § 405(g).

### I. **BACKGROUND**

Plaintiff was born on October 17, 1970, and was 36 years old on his alleged disability onset date of December 31, 2006. (AR at 23, 27.) Plaintiff is a high school graduate, is able to communicate in English, and has past relevant work as a manager,

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, and Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit.

[2] Citations to the Social Security Administrative Record, which is found at Doc. # 10, will be to "AR" followed by the relevant page number(s).

auto servicer (medium, SVP-7), and working manager (heavy, SVP-3). (AR at 27, 28, 148.)

Plaintiff applied for Title II Disability Insurance Benefits on May 19, 2009, alleging disability due to a bad back and knees, a right shoulder problem, and chronic headaches. (AR at 142.) He asserted that he had been disabled since December 31, 2006. (AR at 143.) Plaintiff's claim was denied initially on October 19, 2009. (AR at 65-72.) He requested a hearing with an Administrative Law Judge ("ALJ") (AR at 76-77), which was held on January 25, 2011 (AR at 34-64). At the hearing, Plaintiff was represented by counsel. (AR at 34.) Plaintiff testified, as did a Vocational Expert ("VE").

On February 9, 2011, the ALJ issued a decision, finding that Plaintiff was not disabled at any time from December 31, 2006, through the date of her decision. (AR at 21.) In applying the five-step sequential evaluation process outlined in 20 C.F.R. § 404.1520 to determine whether Plaintiff was disabled, the ALJ determined that:

1. Plaintiff had not engaged in substantial gainful activity between December 31, 2006, and the date of her decision [Step 1];

2. Plaintiff had the following severe impairments: mild lumbar and bilateral knee degenerative joint disease, chondromalacia, and post-surgical intervention resulting in chronic neck and knee pain [Step 2];

3. Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 [Step 3];

    4. Plaintiff had the residual functional capacity ("RFC") to perform a range of light work as defined in 20 C.F.R. § 404.1567(b), that does not require more than occasional crawling or climbing ladders, ropes, or scaffolds[3];

    5. Plaintiff was unable to perform any past relevant work [Step 4]; and

    6. Given Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as: merchandise marker, router,[4] and clerical assistant. [Step 5].

Thereafter, Plaintiff timely filed a request with the Appeals Council for review, which the Council denied on May 24, 2012. (AR at 12.)

On August 27, 2012, Plaintiff filed a Complaint, seeking judicial review of the denial of Social Security Benefits. (Doc. # 1.) The Social Security Administrative Record was filed with the Court on November 5, 2012. (Doc. # 10.) On January 18, 2013, Plaintiff filed his Opening Brief. (Doc. # 17.) The Commissioner responded on March 13, 2013 (Doc. # 20), and Plaintiff replied on April 1, 2013 (Doc. # 21).

In his appeal, Plaintiff asserts four arguments in support of his contention that the ALJ committed legal errors and that her decision was not supported by substantial evidence. (Doc. # 17 at 2.) Specifically, Plaintiff argues that the ALJ erred by: (1) failing to give proper weight to the opinions of Plaintiff's treating physician, Dr. Jack L. Rook;

---

[3] Light work is defined in 20 C.F.R. § 404.1567(b) as: lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

[4] As defined in the Dictionary of Occupational titles at 222.687-022, a router "[s]orts bundles, boxes, or lots of articles for delivery. . . ."

3

(2) failing to properly consider Plaintiff's nonexertional impairments; (3) failing to consider a lay witness statement regarding Plaintiff's limitations; and (4) failing to properly evaluate Plaintiff's pain complaints pursuant to *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). (Doc. # 17 at 2.) Plaintiff additionally alleges that the Appeals Council erred by failing to consider additional evidence submitted to it after the hearing. (*Id.*)

## II. APPLICABLE LAW

### A. STANDARD OF REVIEW

The record in this case is composed of the evidence that was considered by the ALJ.[5] This Court's review of the decision is limited to determining whether the ALJ's decision is supported by substantial evidence and whether the Commissioner, through the ALJ, applied the correct legal standards. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance. *Id.* at 1084. In reviewing the record and the briefing submitted by counsel, the Court does not reexamine the issues *de novo*, *Sisco v. United States Department of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993), nor does it reweigh the evidence or substitute its judgment for that of the Commissioner, *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). Thus, even when some evidence may have supported contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different

---

[5] Plaintiff also submitted to the Appeals Council evidence that was not before the ALJ at the time of her decision, which the Court addresses, *infra*.

choice had the matter been before it de novo."  *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

**B.     EVALUATION OF DISABILITY**

The qualifications for disability insurance benefits under the Social Security Act are that the claimant meets the insured status requirements, is less than sixty-five years of age, and is under a "disability."  *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991). The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d).

### III.  <u>ANALYSIS</u>

In determining whether a claimant is disabled, the ALJ must consider the following five-step inquiry: (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling by meeting the requirements of a listing; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work, and (5) whether the claimant is capable of performing any work in the national economy.  20 C.F.R. § 404.1520(a)(4).  The claimant bears the burden of establishing a disability at steps one through four. *See, e.g.*, *Gonzales v. Astrue*, No. 11-cv-02344, 2012 WL 4356243, at *2 (D. Colo. Sept. 24, 2012) (unpublished).  If the claimant reaches step five, the burden then shifts to the Commissioner to show that "the claimant is capable of performing work in the national economy."  *Id.*

5

**A.     WHETHER THE ALJ ERRED BY FAILING TO GIVE PROPER WEIGHT TO THE OPINION OF PLAINTIFF'S TREATING PHYSICIAN, DR. ROOK, AND BY FAILING TO CONSIDER PLAINTIFF'S NONEXERTIONAL IMPAIRMENTS, THEREBY FORMULATING AN INACCURATE RFC**

According to the "treating physician rule," the Commissioner will generally "give more weight to medical opinions from treating sources than those from non-treating sources." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2).  In fact, "A treating physician's opinion must be given substantial weight unless good cause is shown to disregard it."  *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 289-90 (10th Cir. 1995).  A treating physician's opinion is accorded this weight because of the unique perspective he has to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

"In deciding how much weight to give a treating source opinion, an ALJ must first determine whether the opinion qualifies for 'controlling weight.'"  *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  To do so, the ALJ:

> must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.  If the answer to this question is 'no,' then the inquiry at this stage is complete.  If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record.  [. . .]  [I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Id.* (internal quotation marks and citations omitted).

Even if a treating physician's opinion is not entitled to controlling weight, however, "[t]reating source medical opinions are still entitled to deference and must be

weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Id.* Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001); 20 C.F.R. § 404.1527(c). Under Tenth Circuit caselaw, "an ALJ must give good reasons for the weight assigned to a treating physician's opinion that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley*, 373 F.3d at 1119 (internal quotation marks and citations omitted).

In the instant case, Plaintiff contends that the ALJ erred by improperly rejecting the opinion of Dr. Rook, Plaintiff's treating physician, and for failing to consider Plaintiff's nonexertional impairments. (Doc. # 17 at 7.) Specifically, Plaintiff argues that "Dr. Rook's opinion should have been given controlling weight with respect to [Plaintiff's] RFC" or at the least, "should have been given significant weight by the ALJ." (*Id.*) Plaintiff states that the ALJ's improper rejection of Dr. Rook's opinion was determinative to her conclusion that Plaintiff was not disabled. (*Id.*)

Dr. Rook provided his opinion as to Plaintiff's limitations on a worksheet entitled, "Ability To Do Work-Related Activities (Physical)." (AR 263-67.) On the worksheet, Dr. Rook concluded that Plaintiff, among other things, could not stand or walk for more

7

than one hour, each, during an eight-hour workday, could rarely lift more than 11 pounds, and would not be a reliable or consistent worker. (*Id.*) Dr. Rook additionally checked boxes indicating that Plaintiff could never kneel, crouch, crawl, or squat, and could only rarely bend or climb. (*Id.*) Despite Plaintiff's characterization of the worksheet as a "detailed medical source statement outlining [Dr. Rook's] opinion regarding [Plaintiff's] limitations" (Doc. # 17 at 10), Dr. Rook did not list a single medical finding to support his conclusions, even though the worksheet explicitly asked for such information. (*See* AR 263-67.)

In determining that Dr. Rook's opinion was not entitled controlling weight, or significant weight, the ALJ explicitly cited two factors provided in 20 C.F.R. § 404.1527(c): (1) Dr. Rook's opinion was not supported by the objective medical findings (*i.e.*, Dr. Rook failed to list a single medical finding with his opinion as discussed *supra*); and (2) Dr. Rook's opinion was not consistent with the other substantial evidence, including his own examination records, (AR at 27). *See* 20 C.F.R. § 404.1527(c)(3) (supportability); (c)(2)(consistency). An ALJ is not required to "discuss all the § 404.1527(c) factors for each of the medical opinions before him," *Oldham*, 509 F.3d at 1258, and in the instant case the reasons given by the ALJ are "sufficiently specific to make clear . . . the reason" for the weight the ALJ gave to Dr. Rook's opinion. *See Langley*, 373 F.3d at 1119.

If an ALJ rejects a treating source's opinion entirely, the ALJ must give specific, legitimate reasons for doing so. *Watkins*, 350 F.3d at 1301. In its limited reviewing capacity, this Court finds that the ALJ's reasons for disregarding Dr. Rook's opinion are both legitimate and sufficiently specific. In her decision, the ALJ satisfied the

requirement of "confirm[ing] that the opinion is consistent [or inconsistent] with other substantial evidence in the record." *Id.* at 1300.  In over two pages of analysis, the ALJ discusses contrary medical findings, including Dr. Rook's own medical records, and those of Dr. Edwin L. Baca.  (AR at 25-27.)

Among the records considered by the ALJ were Dr. Rook's treatment notes from September 20, 2001 through November 4, 2010.[6]  (AR at 235-240; 441-475.)  In the earliest treatment notes before the ALJ, Dr. Rook opined in September 2001, prior to

---

[6]  Subsequent to the ALJ's decision, and therefore not considered by the ALJ, Dr. Rook submitted a two page additional summary opinion in which he stated, in part, that Plaintiff could not "function in a light physical demand level principally because of his multiple musculoskeletal problems." (AR at 9.)  In this letter, Dr. Rook discussed medical evidence, including MRIs of Plaintiff's left and right knees from 2005 and of his right shoulder from 2002. (*Id.*)  Dr. Rook also discussed previous diagnostic workups of Plaintiff's cervical spine, which demonstrated a muscle spasm that precipitates his headaches, and of his lumbar spine which demonstrate a L5 spondylolysis. (AR at 10.)  Dr. Rook also discussed Plaintiff's subjective complaints of frequent, severe headaches. (*Id.*)  There is no indication that the Appeals Counsel considered Dr. Rook's letter.  *See Lawson v. Charter*, 83 F.3d 432, 1996 WL 195124, at *1 (10th Cir. Apr. 23, 1996) (Appeals Counsel denied review without any reference to submitted materials.)  Therefore, the Court must determine whether the letter is (1) new, (2) material, and (3) related to the period on or before the date of the ALJ's decision.  *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011); *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) (court reviews *de novo* whether the Appeals Counsel erroneously rejected evidence).  If the letter meets these criteria, the Appeals Council should have considered this evidence offered on administrative review, after which it becomes a part of the record on judicial review.  *Krauser*, 638 F.3d at 1328.  The Court agrees with the Commissioner that this report does not contain new information, and is cumulative of Dr. Rook's prior medical opinion which the ALJ found to be unsupported and contradicted by other medical evidence in the record.  *See Wilson v. Astrue*, 602 F.3d 1136, 1148 (10th Cir. 2010); *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003) ("Evidence is new within the meaning of 404.970(b) if it is not duplicative or cumulative.")  The MRIs were a part of the record before the ALJ (AR at 283-89, 295), as were the diagnostic workups of Plaintiff's spine (AR at 289-94, 475).  As discussed *infra*, the record is replete with Plaintiff's subjective complaints of headaches.  To the extent Dr. Rook reasserted his opinions regarding Plaintiff's nonexertional limitations, these views were included in Dr. Rook's worksheet, which the ALJ explicitly discussed in her decision. (*See* AR 27; 263-67.)  Therefore, this evidence is not new and remand on this basis is not required.  *See Chambers*, 389 F.3d at 1144 (remand not required where evidence was not new, material, and chronologically relevant); *Krauser*, 638 F.3d at 1328 ("If the evidence does not qualify, the Appeals Counsel does not consider it and it plays no role in judicial review.")

Plaintiff's alleged disability onset date and during the time Plaintiff was still working, that Plaintiff's rib X-rays "were unrevealing," X-rays of his lumbar spine "were essentially normal," and that X-rays of his "cervical spine demonstrated muscle spasm with minimal degenerative changes . . . ." (AR at 475.) Dr. Rook also noted that Plaintiff was experiencing headaches that usually responded well to Midrin. (*Id.*) In November 2001, Dr. Rook noted that Plaintiff continued to work full time, and had slight overall improvement but still experienced headaches, and neck and lower back pain. (AR at 474.) In December 2001, Dr. Rook noted that Plaintiff continued to complain of headaches, neck and low back pain, and knee discomfort. (AR at 473.) Dr. Rook ordered MRI imaging to investigate Plaintiff's pain complaints. (*Id.*)

In January 2002, Plaintiff returned to Dr. Rook to review his MRI results. (AR at 472.) According to Dr. Rook's notes, the cervical MRI showed a "mild disc bulging at C5-6 and C6-7 without evidence of disc herniation or nerve root impingement." (*Id.*) Dr. Rook noted that the rest of the cervical MRI "was within normal limits." (*Id.*) Plaintiff's lumbar spine MRI "demonstrated degenerative changes at L 23 and L5-S1 . . . with no lateralization or nerve or spinal canal compromise." (*Id.*) Dr. Rook found spondylolysis "on the left at L 5" but not the right side, and "no evidence of spondylolisthesis."[7] (*Id.*) The remainder of Plaintiff's lumbar spine MRI was "normal." (*Id.*) Dr. Rook noted that Plaintiff had a "localized area of palpable spasm" and "low

---

[7] Spondylolysis is a small stress fracture of the vertebra. Spondylolisthesis is a condition in which a bone (vertebra) in the spine slips out of the proper position onto the bone below it. *See* American Academy of Orthopaedic Surgeons, http://orthoinfo.aaos.org/topic.cfm?topic=A00053 (last visited Jun 25, 2013).

back tenderness," for which he recommended "trigger point injections or Botox injection therapy." (*Id.*)

Plaintiff returned to Dr. Rook for Botox injection therapy which was "tolerated well" and that reduced the occurrence and intensity of Plaintiff's headaches and neck pain. (AR 469-70.) In April 2002, Dr. Rook noted that Plaintiff reported that the "effectiveness of the previous Botox injections" was starting to wear off and that he was once again experiencing headaches and neck pain. (AR at 468.) Dr. Rook additionally noted that Plaintiff continued to work full-time. (*Id.*) The next month, in May 2002, Dr. Rook treated Plaintiff with another round of Botox injection therapy, and noted that MRI imaging on his right shoulder was "significantly abnormal" with "advanced tendonopathy . . . [and] a partial thickness tear of the supraspinatus tendon." (AR at 466.) Dr. Rook referred Plaintiff to Dr. Arnold Ahnfeldt to explore treatment options for his shoulder and knee pain. (*Id.*) In a later visit in May, Dr. Rook noted that the previous Botox injection therapy was not helpful and that Plaintiff continued to complain of headaches. (AR at 465.) Dr. Rook opined that the headaches did "not sound like migraines" and prescribed "low dose Zanaflex." (*Id.*) The next month, Dr. Rook noted that Zanaflex had helped "slightly," and that Plaintiff had "a steroid injection performed to his right shoulder by Dr. Ahnfeldt." (AR at 464.)

In July 2002, Plaintiff told Dr. Rook that the steroid injection had been "very helpful" and that he had not experienced any bad headaches "over the past month," and while "he still gets daily headaches . . . [t]here has been some improvement . . . overtime." (AR at 463.) Over the next year, Plaintiff continued to see Dr. Rook for his headaches, and neck and low back pain. (AR 454-61.) Over this time, Dr. Rook

11

reviewed Plaintiff's complaints, adjusted his medications, administered Botox injection therapy, and recommended additional treatment including surgery on his shoulder and knee. (*Id.*) Despite Plaintiff's continuous complaints regarding his headaches, neck pain, back pain, right shoulder pain, and bilateral knee pain, Dr. Rook noted that "nevertheless, he continues to work full-time." (AR at 458.) In 2003, Dr. Rook noted that Plaintiff had undergone arthroscopic surgery on both knees and reported "fairly significant improvement with regards to his knee pain." (AR at 454-56.) During this time, Plaintiff reported that his headaches were responding well to Imitrex (AR at 455), and Zomig (AR at 454).

While Plaintiff experienced particularly severe headaches in August 2003 (AR at 452-53), in September he reported that he did not have "severe headaches over the past three weeks." (AR 451.) In December 2003, Dr. Rook noted that Plaintiff "had been doing a little better over the past few months" and that while "he still has headaches on a daily basis . . ." he had not had a migraine since August. (AR at 450.)

According to Dr. Rook's April 2004 evaluation notes, Plaintiff was hit by a vehicle in a parking lot on January 11, 2004. (AR at 447.) The accident injured "both legs from above the knees to the ankles" and resulted in "extensive bruising" and "swelling in his left knee" but no fractures. (*Id.*) Dr. Rook's evaluation states that prior to this accident, Plaintiff's "average daily pain was 1-2/10" and that after the accident his average pain was "4-5/10." (AR at 447-49.) Despite this, Dr. Rook opines that there has "been no significant change in his condition since the recent accident," and that he continues to "work[] full-time." (AR at 448.) Additionally, Dr. Rook noted that Plaintiff was in "no apparent distress . . . ambulated normally in the examination room . . . [and] did not

12

demonstrate any chronic pain behaviors." (*Id.*) Finally, Dr. Rook found that Plaintiff's "lower extremity motor strength was normal" and that "he is reasonably comfortable with the current medications." (AR at 448-49.) Two months later, in June 2004, Dr. Rook noted that while Plaintiff complained of knee pain and was scheduled for surgery with Dr. Ahnfeldt, he continued to work full-time. (AR at 446.) There was no mention of headaches in Dr. Rook's June 2004 notes. (*Id.*)

Plaintiff's next visit with Dr. Rook was more than a year later on September 15, 2005. (AR at 445.) In his treatment notes, Dr. Rook comments that Plaintiff continues to have knee pain and muscle spasms in his back, but does not mention Plaintiff's headaches. (*Id.*) Dr. Rook notes that Plaintiff continues to work full-time, although opines that "his job is probably too physically demanding . . . given his current physical problems." (*Id.*) Plaintiff did not see Dr. Rook again until November 2006. (AR at 240.) During his annual evaluation, Dr. Rook noted that Plaintiff was taking "Robaxin as a muscle relaxant and Vicodan high potency as an analgesic" for "chronic headaches, neck pain, back pain, and knee pain." (AR at 240.) He opined that the medications were "helpful and well tolerated," and that Plaintiff's "condition [was] stable." (*Id.*) Plaintiff alleges that his condition first interfered with his ability to work (*i.e.*, that "he became unable to work because of his disabling condition") a month after this visit with Dr. Rook. (AR at 117, 143.)

The next year, in 2007, Dr. Rook opined that Plaintiff's condition was "about the same," and that "he continues to experience chronic neck pain and headaches." (AR at 239.) Dr. Rook additionally noted that Plaintiff had been seeing a chiropractor and that "his condition has been improving with the chiropractic treatment." (*Id.*) In Dr. Rook's

13

treatment notes from Plaintiff's 2008 annual evaluation, Dr. Rook noted that Plaintiff's condition was stable, but that he "continues to complain of bilateral knee pain, neck pain, and headaches." (AR at 238.) Dr. Rook opined that Plaintiff's medications are helpful and well tolerated and that Plaintiff has "good days and bad days." (*Id.*) In May 2009, Dr. Rook noted that Plaintiff "continues to complain about headaches, neck pain, and back pain," and that Plaintiff was "developing a tolerance to the high potency Vicodin." (AR at 237.) Dr. Rook prescribed a "low-dose Methadone . . . as a long-acting agent . . . with Vicodin as the rescue agent." (*Id.*) The following month, in June 2009, Dr. Rook noted that Plaintiff is "much more comfortable with the addition of Methadone," and that the Methadone "has been very well tolerated." (AR at 236.) Dr. Rook added that Plaintiff's biggest problem at that time "is intermittent severe headaches." (*Id.*) In April 2010, Dr. Rook noted that Plaintiff enjoyed an "overall improvement in his condition," that he is "almost back to a baseline level, where he was prior to the recent motor vehicle accident [in December 2009]," and that he is "stable with the current pharmacologic regimen." (AR at 443.) Six weeks later, in May 2010, Dr. Rook noted that Plaintiff experienced a slight "increase in upper and lower back pain since the accident . . . on December 15, 2009," but that "he is now at maximum medical improvement related to injuries sustained" in that accident. (AR at 442.) There was no mention of Plaintiff's headaches in Dr. Rook's May 2010 notes. (*Id.*) In his most recent treatment notes dated November 4, 2010, Dr. Rook noted that Plaintiff was "doing well with the current pharmacologic regimen," and that Plaintiff's condition was "stable" with improvements in Plaintiff's "cervical range of motion" and "some decrease in [Plaintiff's] headaches." (AR at 441.)

In his treatment notes from 2006 through November 4, 2010, Dr. Rook consistently opined that Plaintiff had no pain behaviors, was not under distress, ambulated normally, was "well groomed," and had been mentally alert with normal thought and mood. (AR 236-40; 441-44.)

The Court's role is not to reweigh the evidence or substitute its judgment for that of the Commissioner, *Salazar*, 468 F.3d at 621, and finds that the ALJ's decision not to give Dr. Rook's opinion controlling or significant weight was supported by substantial evidence (*i.e.*, the treatment notes discussed *supra*, the findings and opinion of Dr. Baca and Plaintiff's own testimony, as discussed in the ALJ's opinion (AR at 25-27)).

Additionally, the Court finds that the ALJ did, in fact, consider Plaintiff's nonexertional impairments. The ALJ discussed Plaintiff's chronic headaches and pain at length in her opinion, and factored them into her analysis. (AR at 21-29.) While Plaintiff argues that he should be found disabled because his headaches interfere with his ability to work on a consistent basis (Doc. # 17 at 19), the evidence discussed above demonstrates that Plaintiff's condition had been stable and that he was improving with chiropractic care.[8] The ALJ noted that she did not find Plaintiff's assertions that he was in "constant pain" to be credible, and noted that Plaintiff testified that he drives, shops, cooks, and eats out. In addition, while Plaintiff alleged total disability to the Social Security Administration, he presented himself as willing and able to work to a State government agency and received unemployment benefits for a period of time. (AR at 23) (citing *Vanatta v. Barnhard*, 327 F. Supp. 2d 1317, 1321 (10th Cir. 2004)). Finally,

---

[8] Furthermore, the evidence demonstrates that, prior to claiming disability, Plaintiff had worked for five years while suffering from similar headaches.

the ALJ noted that the medical evidence does not establish any neurological defects. (AR at 27.)  Thus, contrary to Plaintiff's contention, the ALJ considered his headaches as a nonexertional impairment.  The ALJ's RFC determination that Plaintiff can perform light work as defined in 20 C.F.R. § 404.1567(b), that does not require more than occasional crawling or climbing ladders, ropes, or scaffolds, is supported by substantial evidence and is based on correct legal standards; therefore the Court does not find a basis for reversal at Step Four.

**B.   WHETHER THE ALJ ERRED BY FAILING TO CONSIDER THE LAY WITNESS STATEMENT FROM PLAINTIFF'S MOTHER REGARDING PLAINTIFF'S LIMITATIONS**

Plaintiff next argues that the ALJ erred by failing to consider a two-page written statement (AR 174-75) submitted by his mother, Gloria Lindsey, in which she describes her observations of Plaintiff's limitations.  (Doc. # 17 at 27.)  In her statement, Ms. Lindsey states, in part, that at times she had seen Plaintiff "have pain to where he could not lift his head or think" and that he "could barely speak" on the telephone. (AR at 174-75.)  She adds that Plaintiff has "days when he cannot get out of bed" and that "he is always in pain."  (*Id.*)  The regulations state that the Commissioner will consider "descriptions and observations of [a claimant's] impairment(s), including limitations that result from [a claimant's] symptoms, such as pain, provided by . . . [claimant's] family, or other persons."  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). However, the ALJ is not required to make a specific written finding as to a lay witness's

credibility.[9]  *See Adams v. Chater*, 93 F.3d 712, 715 (10th Cir. 1996); *see also Reynolds v. Chater*, 82 F.3d 254, 258 (8th Cir. 1996) (holding that the ALJ's decision was supported by substantial evidence even thought that ALJ did not make express findings as to the credibility of claimant's wife's testimony).  Additionally, Ms. Lindsey's statement was redundant and merely corroborated Plaintiff's account of his pain and daily activities, which the ALJ did discuss in her decision.  (AR at 23-25.); *see also Herron v. Shalala*, 19 F.3d 329, 336 (7th Cir. 1994) (holding that the ALJ did not err by failing to expressly discuss claimant's wife's testimony because the ALJ addressed the same issues in relation to claimant's testimony); *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (same).  While specific delineations of credibility findings are preferable, the fact that the ALJ did not expressly discuss Ms. Lindsey's written statement constitutes harmless error, and therefore does not serve as a basis for reversal.  *See Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir 2011.) ("ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'").

### C.   WHETHER THE ALJ ERRED BY FAILING TO EVALUATE PLAINTIFF'S PAIN COMPLAINTS PURSUANT TO *LUNA V. BOWEN*

Plaintiff alleges that the ALJ erred by failing to follow the framework set out in *Luna v. Bowen*, 834 F.2d 161, 163-4 (10th Cir. 1987) for analyzing disabling pain. (Doc. # 17 at 27-28.)  *Luna* requires the ALJ to consider: (1) whether there is objective

---

[9] Additionally, the Court distinguishes written statements from testimony given under oath during a hearing.  While the ALJ would be able to assess credibility of a witness giving testimony during a hearing, such determination would be tenuous, at best, in a written statement.

medical evidence of a pain-producing impairment; (2) whether there is a "loose nexus" between the pain-producing impairment and the subjective allegations of pain; and (3) whether the pain is in fact disabling, considering all of the objective and subjective evidence. *Luna*, 834 F.2d at 163-4.

In her opinion, the ALJ found that there was objective medical evidence of a pain-producing impairment, and that there is a nexus between the impairment and the allegations of pain. (AR at 25.) However, after her consideration of the record, the ALJ concluded that Plaintiff's statements regarding "the intensity, persistence and limiting effects of these symptoms" were not credible to the extent that "they are inconsistent with the" RFC assessment. (*Id.*) The ALJ then concluded that Plaintiff's pain levels would allow him to do light work. (AR at 23-27.) Despite Plaintiff's assertion to the contrary, the Court finds that the ALJ satisfied the analysis required by *Luna v. Bowen* and, therefore, does not find a basis to reverse on this issue.

## IV. **CONCLUSION**

For the foregoing reasons, it is ORDERED that the ALJ's decision is AFFIRMED. Each party shall bear its own costs and attorney's fees.

DATED: July __01__, 2013

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge